# ORIGINAL]

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 APR 27 PM 2: 13

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

RICKY MARCUS CURRY,           )
                              )
         Petitioner.          )
                              )
    v.                        )        CV 103-135
                              )        (Former CR 197-025)
UNITED STATES OF AMERICA       )
                              )
         Respondent.          )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Petitioner Ricky Marcus Curry, an inmate currently incarcerated at the United States Penitentiary in Atlanta, Georgia, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the United States of America ("the Government"). The Court also **REPORTS** and **RECOMMENDS** that Petitioner's motion for an evidentiary hearing (doc. no. 19) be **DENIED**. Finally, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion to amend and supplement his § 2255 motion (doc. no. 20) to include a claim based upon the Supreme Court's recent decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), be **DENIED**.

## I. BACKGROUND

Petitioner and three co-defendants were named in an indictment in the Southern District of Georgia on July 11, 1997. United States v. Curry, CR 197-025, doc. no. 3,

23/3/3

(S.D.Ga. July 11, 1997)(hereinafter "CR 197-025"). Petitioner was charged under Counts One and Two of the indictment with conspiracy to possess with intent to distribute and to distribute cocaine base and cocaine hydrochloride, and possession with intent to distribute cocaine hydrochloride, respectively, all in violation of 21 U.S.C. § 846. Id.. After a jury trial held before the Honorable Dudley H. Bowen, Jr., United States District Judge, Petitioner was convicted on both counts. CR 197-025, doc. nos. 234, 263. On February 19, 1999, the Court sentenced Petitioner to concurrent terms of life imprisonment as to each count. CR 197-025, doc. no. 255.

Petitioner then filed an appeal to the Eleventh Circuit Court of Appeals. The Eleventh Circuit affirmed in an unpublished, *per curiam* opinion. United States v. Curry, 211 F.3d 129 (11th Cir. 2000)(Table), CR 197-025, doc. no. 273 (hereinafter "Gov't's Ex. C"). The Supreme Court granted certiorari and remanded the case to the Eleventh Circuit for further consideration in light of Apprendi v. New Jersey, 530 U.S. 466 (2000).[1] See Curry v. United States, 531 U.S. 953 (2000)(*mem.*). Upon remand, the Eleventh Circuit affirmed and reinstated its earlier opinion. United States v. Curry, 31 Fed. Appx. 928 (11th Cir. 2002)(Table), *cert. denied*, 537 U.S. 934 (Oct. 7, 2002), CR 197-025, doc. no. 282 (hereinafter "Gov't's Ex. F"). Petitioner then timely filed the instant § 2255 motion. Petitioner has since filed a motion to amend and supplement his § 2255 motion to include a claim based upon the Supreme Court's recent decision in Blakely v. Washington, __ U.S.

---

[1] In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

__, 124 S. Ct. 2531 (2004).[2] (Doc. no. 20). He has also requested the Court to grant him an evidentiary hearing regarding his ineffective assistance of counsel claims. (Doc. no. 19).

Petitioner's claims can be categorized as follows:

1) Petitioner's trial counsel was ineffective for failing to advise him that he would be sentenced as a career offender. According to Petitioner, if he had known that he could be considered a career offender under the Sentencing Guidelines, he would have" accepted the government's plea bargain offer and received a sentence below ten (10) years." (Doc. no. 1, p. 4).

2) Petitioner is "actually innocent of enhanced sentence [sic] of both Count One and Count Two" (Id.).

3) The indictment was defective because it "did not state which possession occurred on July 17, 1995, nor did it put [Petitioner] on notice for such quantities sufficient of the charged offense [sic]." (Id.).

4) The prosecutor committed misconduct, including intentionally eliciting perjured testimony and making improper remarks during the trial. (Id. at 69, 78).

5) Petitioner's counsel was ineffective for failing to "object and cross examine the perjured trial testimony" and for failing to raise the issue of perjured testimony on appeal. (Id. at 5, 55).

6) Sentence enhancement under 21 U.S.C. § 851 was improper "because of insufficient notice under statutory section 841(b)." (Id. at 83).

The Government argues that all of Petitioner's claims should be denied, that leave to amend should be denied, and that the case should be resolved without a hearing. For the following reasons, the Court agrees with the Government.

## II. DISCUSSION

### A.    No Need for Evidentiary Hearing

The Court recognizes that in the Eleventh Circuit, the general rule is "that effective

---

[2]In Blakely, the Supreme Court revisited the rule of Apprendi to determine that a sentence that was enhanced under the State of Washington's sentencing guidelines based on facts found by the sentencing judge and not the jury violated the defendant's Sixth Amendment rights. 124 S. Ct. at 2538.

assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted); see also Powell v. United States, No. 03-10389, slip op. at 2-3 (11th Cir. Dec. 2, 2003) (requiring evidentiary hearing on § 2255 motion unless record "conclusively" shows that petitioner is entitled to no relief).

As described in detail below, the Court finds that because Petitioner's claims are affirmatively contradicted by the record, procedurally barred, or otherwise fail as a matter of law, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing should be **DENIED**. (Doc. no. 19).

B.     **Claims Not Properly Before the Court**

    1.     **Available Claims Must be Properly Raised on Direct Appeal.**

As an initial matter, it appears that nearly all of Petitioner's claims are barred from review in this post-conviction proceeding. "Generally, if a challenge to a conviction or

sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge."[3] United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005)(*per curiam*)(citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*). "Because a defendant has the right to directly appeal a sentence pursuant to the Sentencing Guidelines, the defendant is precluded from raising Guidelines issues in collateral proceedings under § 2255." Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996).

In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citation omitted). A procedural bar or default cannot be overcome unless the § 2255 movant "can demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error." Montano, 398 F.3d at 1280. "In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

---

[3]As discussed *infra* at Part II.C., ineffective assistance of counsel claims are excepted from the procedural default rule. See Massaro v. United States, 538 U.S. 500, 509 (2003).

### 2. Grounds Rejected on Direct Appeal May Not be Reconsidered.

In addition, claims that are raised and rejected on direct appeal are generally precluded from reconsideration in a § 2255 motion. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills, 36 F.3d at 1056; Edwards v. United States, 795 F.2d 958, 961 (11th Cir. 1986); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (*per curiam*). As the Seventh Circuit noted, "[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal.[4] Nyhuis, 211 F.3d at 1343. Thus, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

### 3. Petitioner Brings Claims He Failed to Properly Assert on Direct Appeal and Attempts to Recast Arguments Rejected by the Eleventh Circuit on Direct Appeal.

#### a. "actually innocent of enhanced sentence"/defective indictment

Here, Petitioner argues that the indictment and his sentence were fatally flawed because the indictment failed to charge, and the jury did not find beyond a reasonable doubt, the drug quantities attributed to him at sentencing. (Doc. no. 1, pp. 25-43). Although

---

[4]Stated another way, simply putting a new name on an old issue will not suffice.

Petitioner maintains otherwise, it is clear that these arguments are an attempt to relitigate Apprendi claims which were rejected by the Eleventh Circuit. Of course, the Court is aware that the Eleventh Circuit did not reach the merits of those claims, instead holding that Petitioner had waived those claims by "fail[ing] to raise an Apprendi-type claim in his initial brief on appeal, which was filed on September 24, 1999." Gov't's Ex. F, p. 2; see also United States v. Levy, 379 F.3d 1241, 1242-45 (11th Cir. 2004)(per curiam)(explaining that appellant's failure to raise an issue in his initial brief constitutes waiver of that issue). Nevertheless, Petitioner's waiver of those claims on direct appeal also prevents this Court from reaching their merits.

To begin, it should be noted that it is well-settled that Apprendi does not apply retroactively to cases on collateral review, like this one. McCoy v. United States, 266 F.3d 1245, 1256-58 (11th Cir. 2001). In addition, because Petitioner did not *properly* bring his Apprendi claim on appeal, he cannot now revive his claims in this collateral proceeding. "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal." McCoy, 266 F.3d at 1258 (citation omitted). In McCoy, a § 2255 movant, who had failed to file a direct appeal, attempted to bring an Apprendi challenge for the first time on collateral attack. The Eleventh Circuit explained that Apprendi did not apply retroactively, that McCoy's failure to raise the claim on direct appeal amounted to a procedural default, and that no cause existed to excuse the default, even though Apprendi had not been decided at the time McCoy's conviction became final:

McCoy contends that "cause" exists because the basis for his Apprendi claim

7

was not known until after his conviction became final, since drug quantity was considered a mere sentencing factor until Apprendi. It is true that a claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default. However, the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was "available" at all . . . Apprendi himself raised the issue some time before his case was argued to the New Jersey appellate court in February of 1997, so the building blocks for arguing it were obviously in existence as early as then . . . the foundation for Apprendi was laid years before the Supreme Court announced Apprendi.

Id. at 1258 (citations and quotations omitted). Thus, Apprendi-type arguments had long been available by the time of McCoy's conviction. Id. The same is true in the instant case.

By failing to properly raise his Apprendi arguments in his initial appellate brief, Petitioner, like McCoy, procedurally defaulted on his claims. The only difference between McCoy and the instant case is that McCoy defaulted on his claim because he never filed a direct appeal, while Petitioner defaulted on the instant claims by failing to raise them in his initial appellate brief. The Court is not persuaded that this distinction is meaningful--either way the issue has been defaulted because it was not properly raised on direct appeal. Petitioner's attempt to recast his claims in this collateral proceeding does not alter the Eleventh Circuit's conclusion that the claims are barred. See Gov't's Ex. F.

Having established that the claims have been defaulted, the Court notes that Petitioner has not shown cause to excuse his default. In fact, Petitioner has made no attempt to do so, instead simply hoping his claims can avoid the Apprendi label. Even so, the Court notes that Petitioner cannot show the requisite cause. The Eleventh Circuit has foreclosed the best arguments available to Petitioner--namely, that it would have been futile to raise an Apprendi-type claim in his initial brief, or else that his appellate counsel was ineffective for

8

failing to raise the issue in the initial brief. The Eleventh Circuit has explained that any perceived futility in raising an Apprendi-type argument prior to the Supreme Court's announcement of Apprendi does not constitute cause. "[R]easonable defendants and lawyers could well have concluded it would be futile to raise the [Apprendi] issue . . . The problem with that position is . . . that perceived futility does not constitute cause to excuse a procedural default." Id. at 1258-59. Thus, Petitioner's counsel's failure to raise an Apprendi claim in his initial brief, though not unreasonable--and therefore not ineffective assistance of counsel--nevertheless bars Petitioner from raising an Apprendi claim in this proceeding.

Of course, Petitioner makes a last-ditch effort to circumvent the procedural default rule by cloaking his claims with protestations of "actual innocence." However, the Eleventh Circuit has explicitly rejected Petitioner's argument that a supposed Apprendi error raises "the spectre of actual innocence." Id. at 1257 n.16. Apprendi presented a new rule of criminal *procedure*--it did not make Petitioner's conduct "not criminal;" thus, "actual innocence" is not an issue in this case. Id. In sum, Petitioner's Apprendi claims regarding drug quantity are barred, having been rejected as procedurally defaulted by the Eleventh Circuit on direct appeal.

**b.** **21 U.S.C. § 851 enhancement improper due to "insufficient notice under statutory section 841(b)"**

Here, Petitioner apparently argues either that the Government did not provide adequate notice under 21 U.S.C. § 851 or that the indictment was defective because neither the indictment nor the pretrial notice referenced § 841(b)(1)(A). (Doc. no. 1, p. 83). To the extent this argument represents another Apprendi-type claim, it is barred for the reasons discussed above. Also, as the Government correctly points out, Petitioner attempted to raise

9

these issues in a supplemental brief on appeal. See Gov't's Ex. D. The Eleventh Circuit did not specifically address these issues on appeal in its opinion reinstating its earlier opinion and affirming Petitioner's sentence.

Nonetheless, it was unnecessary for the Eleventh Circuit to address the merits of these claims because Petitioner did not bring these issues at trial or in his *initial* appellate brief. As a result, these claims were waived. Levy, 379 F.3d at 1242-45. As discussed *supra*, Petitioner cannot revive waived claims on collateral attack. Moreover, even if one were to assume the matter was not waived, the Eleventh Circuit's opinion would still constitute a binding adjudication as to the issue. It is not necessary for an appellate opinion to specifically address every argument raised in a brief to constitute a binding adjudication as to presented claims. These claims, contained in Petitioner's supplemental brief, were before the Eleventh Circuit at the time it affirmed Petitioner's sentence and held that the Apprendi claims were barred. It is irrelevant whether the Eleventh Circuit rejected these additional claims as untimely brought or as so lacking in merit that they did not have to be specifically addressed. As the Seventh Circuit has aptly noted, "[p]resented is presented." White, 371 F.3d at 903. Petitioner cannot get a second bite at the apple.

Finally, even assuming the issue were properly before the Court, it would still be due to be denied because Petitioner has not shown that the allegedly defective § 851 notice actually impacted his sentence. As the Government points out, Petitioner's life sentence was based upon the drug quantity attributed to him and an application of the Guidelines, quite apart from any enhancement under § 851. (Doc. no. 9, pp. 25-26 (citing Sentencing Tr., CR 197-025, doc. no. 264, pp. 23-24, 30-32, 34-26, 43)). In sum, the claim lacks merit and does

10

not warrant further discussion.

### 4. Petitioner's Proposed Blakely Claim is also Barred.

In addition, as to Petitioner's proposed amendment to his § 2255 motion, the Court notes that Petitioner is barred from bringing his purported Blakely claim. This is because Blakely does not present a newly recognized right *made retroactively applicable to cases on collateral review*, such as the instant case. Thus, even assuming that Petitioner's proposed Blakely claim should not be rejected as another recharacterization of his already litigated Apprendi claims, Petitioner may not amend his petition to raise a claim under Blakely because any such amendment would be futile.

Petitioner's conviction became final on October 7, 2002, when the Supreme Court denied his petition for writ of certiorari[5]--well before the Supreme Court rendered the Blakely decision on June 24, 2004. The Eleventh Circuit has explained succinctly that neither Blakely nor the Supreme Court's decision earlier this year in Booker v. United States, __ U.S. __, 125 S. Ct. 738 (2005), which applied Blakely to the Federal Sentencing Guidelines, can be applied retroactively to cases on collateral review. See Varela v. United States, 400 F.3d 864, 865 (11th Cir. 2005)(*per curiam*)(Blakely and Booker do not apply retroactively to § 2255 petition.); In re Anderson, 396 F.3d 1336, 1337(11th Cir. 2005)(same); In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004)(Blakely does not apply retroactively to cases on collateral review.). This conclusion is supported by Supreme Court precedent. See Schriro v. Summerlin, __ U.S. __, 124 S. Ct. 2519, 2526 (2004)(holding that

---

[5]See Washington v. United States, 243 F.3d 1299, 1300 (11th Cir. 2001).

Ring v. Arizona, 536 U.S. 584 (2002), which extended application of Apprendi to facts increasing a defendant's sentence from life imprisonment to death, is not retroactive to cases on collateral review); Booker, 125 S. Ct. at 756-57, 768 (2005)(holding that Blakely rule applies to federal sentencing guidelines, thus rendering them only "advisory," but limiting retroactive application to "cases on direct review."). Accordingly, Petitioner's motion to amend his § 2255 motion should be **DENIED**.

## C.    Ineffective Assistance of Counsel Claims

First, it should be noted that ineffective assistance of counsel claims are excepted from the general procedural default rules explained above. Lynn, 365 F.3d at 1234 n.17 (citing Massaro v. United States, 530 U.S. 500 (2003)). However, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard. Massaro, 538 U.S. at 505. First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the

12

defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

In addition, the Court is guided by the principle that "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Indeed, strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some

reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) and Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988), the Court will review the merits of the claims which form the basis of Petitioner's ineffective assistance allegations.

### 1.    Alleged Failure to Warn Petitioner about Career Offender Status

Petitioner alleges that his attorney failed to advise him regarding his possible career offender status, asserting that if he had been aware that he would be sentenced as a career offender, he would have accepted the Government's plea bargain offer and received a sentence of less that ten years. (Doc. no. 1, p. 4). Petitioner offers the proposed plea agreement, ostensibly as proof of this claim. (Doc. no. 1, Ex. B). Petitioner also asserts that he "asked counsel to negotiate a deal for 15 years in terms of nolo contender [sic]." (Doc. no. 1, p. 18).

In response, the Government contends that a *nolo contendere* plea was never an option in Petitioner's case, noting that "United States Attorneys are instructed not to consent to a plea of nolo contendere except in the most unusual circumstances and then only after . . . . [approval] by the Assistant Attorney General responsible." (Doc. no. 9, p. 8 (quoting United States Attorney's Manual 9-16.010)). In addition, the Government correctly notes

that *nolo contendere* pleas require the consent of the Court. (Doc. no. 9, p. 8 (citing Fed. R. Crim. P. 11(a)(1)(3))). The Government also maintains, "in light of the wealth of evidence against [Petitioner] and in consideration of [Petitioner's] criminal history" the Government would never "have offered to allow him to plead guilty to an offense with a ten year sentence cap." (Doc. no. 9, p. 8).

The Court is inclined to agree. More importantly, the proposed plea agreement (submitted by Petitioner) contradicts his claims. The agreement, which would have allowed Petitioner to plead guilty to the conspiracy count of the indictment, clearly stated, "the defendant understands that the maximum penalty provided by law for violation of the Conspiracy offense is imprisonment of *not less than Ten (10) years nor more than Life*." (Doc. no. 1, Ex. B.)(emphasis added). The Government never offered Petitioner the deal he suggests. The Government also correctly notes that Petitioner's criminal history would have been taken into account regardless of whether he pled guilty or was convicted at trial. (Doc. no 9, pp. 9-10 (citing USSG §4B1.1)). Simply put, Petitioner's assertion that he could somehow have avoided being sentenced as a career offender by pleading guilty is incredible.

Most importantly, the issue of Petitioner's career offender status had no material effect on his actual sentence. The Government correctly notes that Petitioner's base offense level (calculated by reference to the amount of drugs attributed to Petitioner) and sentence enhancements for obstruction of justice, possession of a firearm, and his role in the offense resulted in a total offense level of 44, regardless of Petitioner's criminal history. (Doc. no. 9, pp. 10, 25 (citing Sentencing Tr., pp. 22-24, 43)). At Petitioner's offense level of 44, the guideline sentence was life imprisonment, without taking into account his status as a career

15

offender. See USSG Sentencing Table.

Petitioner argued on direct appeal that the district court had erred in its determination of the quantity of drugs attributable to him and in adjusting the offense level upward for obstruction of justice; the Eleventh Circuit affirmed, concluding Petitioner's assertions of error were meritless. (Doc. no. 9, Ex. C, United States v. Curry, 211 F.3d 129 (11th Cir. 2000). The Government is quite correct in asserting that "whether or not [Petitioner's] counsel advised him that he might be sentenced as a career offender, no prejudice inured to [Petitioner] with regard to his sentence. . . . as his sentence was driven by the drug quantity for which he was held accountable." (Doc. no. 9, p. 10). Even assuming that Petitioner's counsel failed to inform him of his career offender status, that omission did not prejudice Petitioner.[6]

**2.    Alleged Failure to "Object and Cross-Examine"/Perjured Testimony**

Petitioner's claims that the prosecutor suborned perjury and that his counsel was ineffective for failure to "object and cross-examine" in response to perjured testimony or to raise the perjury issue on appeal are likewise meritless. Perjury is making a false statement

---

[6]The Court also briefly notes the disingenuousness of Petitioner's belated assertion that he was willing to accept responsibility for his actions, plead guilty, and cooperate with the Government. Petitioner would have the Court believe that he was somehow tricked into going to trial by his attorney. The fact of the matter is that Petitioner has steadfastly refused to admit his guilt, even now arguing his "factual innocence," a claim he utterly fails to support. (Doc. no. 1, p. 29). Petitioner's enhancement for obstruction of justice (affirmed by the Eleventh Circuit) was based on a finding that he had perjured himself at a suppression hearing. (Sentencing Tr., pp. 32-36). Simply put, Petitioner's arguments regarding his willingness to plead guilty are incredible. Regardless, any error his attorney may have made in failing to advise Petitioner of his possible career offender status resulted in no prejudice. Petitioner's argument is frivolous.

"with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Williams, 340 F.3d 1231, 1241 n.10 (11th Cir. 2003)(citation and quotation omitted). To obtain a reversal on the grounds that the Government relied on perjured testimony, a criminal defendant must show that the statements at issue: 1) were actually false, 2) were material, and 3) were known to be false by the Government. United States v. Bailey, 123 F.3d 1381, 1395 (11th Cir. 1997). Also, mere inconsistency in testimony between witnesses is not sufficient to show that the government knowingly used perjured testimony. United States v. Michael, 17 F.3d 1383, 1385 (11th Cir. 1994) ("We refuse to impute knowledge of falsity to the prosecutor where a key government witness' testimony is in conflict with another's statement or testimony." Id.); see also Bailey, 123 F.3d at 1395-96 (demonstrating nothing more than "memory lapse, unintentional error, or oversight" does not amount to showing perjury); United States v. Payne, 940 F.2d 286, 291 (8th Cir. 1991) ("[I]t is not enough that the testimony is challenged by another witness or is inconsistent with prior statements, and not every contradiction in fact or argument is material."). The Court will briefly examine Petitioner's alleged instances of perjury.

### a. Agent Owens's inconsistent grand jury testimony

Petitioner contends that Federal Bureau of Investigation Special Agent E. Keith Owens ("Agent Owens"), who testified before the grand jury and at trial, perjured himself by offering contradictory testimony. Following the arrest of Rodney Steven Little, Petitioner's uncle and drug "mule," Agent Owens testified before the grand jury that Mr. Little was arrested during his "sixth trip" bringing cocaine from Miami, Florida, to Augusta,

Georgia for Petitioner. (Aug. 9, 1995 Grand Jury Tr., p. 5, CR 197-025, doc. no. 300). Later, also before the grand jury, both Agent Owens and Mr. Little testified that it was on the "fourth" trip that Mr. Little was arrested. (Nov. 16, 1995 Grand Jury Tr., p. 7, 31, 36-39). According to Petitioner, this contradiction renders Agent Owens's testimony "suspect."

The Court is not convinced. The grand jury transcript reveals that there was some confusion regarding the number of trips made because Mr. Little made trips for Petitioner to obtain cocaine from two different suppliers, Andre and Ryan Isaac (who are brothers) and Carl Springer. (Nov. 16, 1995 Grand Jury Tr., pp. 21-26, 31, 36-39; Trial Tr., pp. 106, 110, 223). However, the Court finds no support for Petitioner's notion that this confusion amounted to perjury. Regardless, both Mr. Little and Agent Owens testified before the grand jury that Mr. Little was arrested while returning from his fourth trip to Mr. Springer. (Nov. 16, 1995 Grand Jury Tr., pp. 7, 38-39). At best, Petitioner points out a minor inconsistency which falls well short of demonstrating that Agent Owens perjured himself.

**b.    Agent Owens's inconsistent trial and grand jury testimony**

Petitioner also points to alleged contradictions in Agent Owens's account of a "controlled" drug delivery between Petitioner and Johnny Lee Owens, Jr. Before the grand jury, Agent Owens testified that Mr. Owens had been surprised at the delivery "when he showed up to purchase a quarter kilo of crack cocaine and he was handed a kilo of powdered cocaine." (July 11, 1997 Grand Jury Tr., p. 7). However, at trial Agent Owens testified that Mr. Owens was arrested before the cocaine actually changed hands. (Trial Tr., p. 31). The Court is not persuaded that this contradiction is material, much less that it is evidence of perjury.

The trial testimony reveals that Agent Owens was obviously referring to Mr. Owens's surprise that Petitioner had shown up at the delivery point with a kilogram of cocaine, when Mr. Owens had come to meet Petitioner intending to purchase only nine (9) ounces. (Trial Tr., p. 30-32). It is also abundantly clear that the law enforcement officials who arranged the "controlled" delivery, including Agent Owens, never intended for the cocaine to actually change hands. (Id. at 52, 61, 70, 133-34, 140). Simply put, Petitioner is grasping at straws. The matter needs no more discussion.

### c.     Agent Owens's comment about "the tape"

Petitioner also contends that Agent Owens lied to the grand jury by telling them that the controlled delivery between himself and Mr. Owens was "on tape." (July 11, 1997 Grand Jury Tr., p. 17). However, as Petitioner knows, a tape of the controlled delivery was indeed made. (Trial Tr., pp. 26, 44, 136). Of course, as was discussed at trial, due to a malfunction and interference from police radio traffic, the recorder used to tape the transaction did not actually record the conversation between Petitioner and Mr. Owens. (Id. at 26, 136). Nevertheless, Agent Owens was able to hear the transaction (through the use of the listening device) from his surveillance vehicle, and his account of the events is consistent with the testimony of Dempsey Miles, another law enforcement official who was actually present at the delivery. (Id. at 26, 138-39).

Assuming *arguendo* that Agent Owens's reference to the transaction being "on tape" before the grand jury was misleading and known by the Government to be "false," one wonders how the statement is material. Petitioner has submitted no basis from which to suppose that this statement "contributed in any significant way to the grand jury's return of

19

the indictment." United States v. Caporale, 806 F.2d 1487, 1514 (11th Cir. 1986). And as noted, the facts regarding the faulty tape recording were submitted to the jury at trial, and the jury decided to believe the Government's witnesses even though there was no tape to corroborate their testimony. Petitioner has not shown that Agent Owens's statement to the grand jury prejudiced him in any way. In sum, the statement simply did not materially affect the course of Petitioner's trial.

### d. remaining alleged instances of "perjury"

Of course, Petitioner brings other alleged instances of perjury, in total providing a litany of alleged inconsistencies and contradictions. None of these contentions have merit, and the Court will not address them all specifically. Given the longstanding and complex drug conspiracy that formed the heart of Petitioner's criminal case, the inconsistences cited by Petitioner--of which the Court has examined a few emblematic examples--are neither sinister nor even unusual. Petitioner did not raise the perjury issue at trial or on appeal, and falls woefully short of demonstrating that his trial or appellate counsel acted unreasonably by not doing so. The evidence presented to the grand jury, at the trial, and at sentencing was more than sufficient to sustain the return of the indictment, the jury's verdict, and Petitioner's sentence. The Government's case rested on a wealth of testimonial evidence from a variety of sources, physical evidence seized at Petitioner's house, and even Petitioner's own statements. Pointing out minor inconsistencies, confusion, and oversights in witness testimony does not give rise to an inference of Government misconduct or cast doubt upon the Government's case in chief.

In essence, Petitioner simply makes a belated attempt to attack the credibility of the

20

Government's witnesses. Absent some showing of actual prejudice, the Court will not indulge Petitioner's invitation to nitpick every conceivable fault in the grand jury and trial testimony. Witness credibility is a matter for the fact-finder, not a court entertaining a collateral attack. See, e.g., United States v. Andrews, 953 F.2d 1312, 1318 (11th Cir. 1992). Petitioner raised issues regarding the sufficiency of the evidence on direct appeal, and lost. See Gov't's Exs. A, C. The matter is foreclosed.

## D.     Prosecutorial Misconduct

Finally, Petitioner alleges that the prosecutor made comments during his closing argument that prejudiced Petitioner. At issue, the prosecutor allegedly: 1) referred to the drugs in the case as "poison," 2) made a reference to the "war on drugs" and described Petitioner as the "enemy," 3) vouched for the Government's witnesses and disparaged the defense's witnesses, 4) compared Petitioner to Saddam Hussein, and 5) mischaracterized the evidence.[7] The Court finds that many of the prosecutor's comments were indeed improper, but do not amount to a claim of constitutional magnitude that is "cognizable in a § 2255 motion." Lynn, 365 F.3d at 1233.

### 1.     Prosecutor's Reference to Illegal Drugs as "Poison"

As to the prosecutor's reference to "poison," Petitioner's counsel promptly objected; the objection was sustained by the Court, which then admonished the jury that there was "no evidence that the cocaine involved here was poison." (Closing Argument Tr., p. 27). First, it should be noted that courts have themselves referred to illegal drugs as poison. See, e.g.,

---

[7]Once again, Petitioner raises a host of alleged errors. The Court will not address them all.

21

United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000). In addition, "[p]rosecutorial appeals for the jury to act as 'the conscience of the community' are not impermissible when they are not intended to inflame." United States v. Smith, 918 F.2d 1551,1562-63 (11th Cir. 1990)(citation omitted). Nevertheless, the prosecutor's reference to "poison" was needlessly inflammatory and improper in this case. (See Closing Argument Tr., p., 27). That having been said, the record does not reflect that this comment had any impact upon the outcome of the trial. Indeed, the jury's verdict was amply supported, and any prejudicial effect from the prosecutor's comment was alleviated by the Court's admonishment. Smith, 918 F.2d at 1562 ("Because statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered."). Simply put, the error did not affect Petitioner's substantial rights.

**2.    Reference to "War on Drugs"**

The prosecutor's reference to the "war on drugs" and description of Petitioner as "the enemy" were also likely improper. See United States v. Boyd, 131 F.3d 951, 955-56 (11th Cir. 1997); United States v. Beasley, 2 F.3d 1551, 1560 (11th Cir. 1993)(reference to "war on drugs" improper if "calculated to inflame"); but see United States v. Delgado, 56 F.3d 1357, 1370 (11th Cir. 1995)(explaining that "reference during closing argument to the drug problems of society and defendants' roles in such problems are not unduly prejudicial or excessively inflammatory")(quotation and citation omitted). It is at least arguable that the comment was intended to inflame the passions of the jury. (See Closing Argument Tr., p. 20). In fact, the Government concedes as much. (Doc. no. 16, p. 2). However, given the overwhelming evidence of guilt in Petitioner's case, coupled with Petitioner's counsel's

failure to object at trial, the Court is not persuaded that reversible error occurred. See Boyd, 131 F.3d at, 955-56. Much like the prosecutor's reference to "poison," his comments about the "war on drugs" had no discernible impact on the course of the trial.

### 3. Improper Vouching/Disparaging of Defense Witnesses

During closing arguments, the prosecutor also repeated a statement by Agent Owens at trial to the effect that the Government does not "put perjurers on the witness stand." (Closing Argument Tr., p. 25). Petitioner argues that Agent Owen's and the prosecutor's vouching was improper. The prosecutor also stated that the defense's witnesses were "obviously [not] telling the truth." (Id.). Petitioner claims these comments were "devastating." (Doc. no. 1, p. 80). The Court does not agree.

First, the prosecutor cannot be faulted for calling a defense witness a liar if his comment about the witness's credibility was "an accurate statement." Chandler v. Moore, 240 F.3d 907, 914 (2001)(§ 2254 case); see also United States v. Ellis, 547 F.2d 863, 869 (5th Cir. 1977). Regardless, Petitioner once again falls to demonstrate that he was prejudiced by this comment during closing argument. See United States v. Calderon, 127 F.3d 1314, 1335-36 (11th Cir. 1997). In the context of the entire trial, it is clear that the jury's verdict is supported by substantial evidence, and Petitioner cannot show that a "reasonable probability" exists that "but for the offending remarks" he would not have been convicted. Id. at 1335. The same principles apply to the prosecutor's improper vouching for the Government's witnesses. The Court will not overturn a jury's verdict on the basis of a few stray remarks which had no discernible impact upon the proceedings and to which Petitioner raised no objection at trial or on direct appeal.

23

### 4. Reference to Saddam Hussein

The prosecutor also urged the jury to convict Petitioner for conduct which occurred at Petitioner's direction by comparing Petitioner's co-conspirators to the Iraqi army, which invaded Kuwait at Saddam Hussein's "direction." (Closing Argument Tr., p. 14). In effect, the prosecutor was simply explaining that one may be held criminally liable for the acts of others if one has actually commanded those acts. 18 U.S.C. § 2. Petitioner does not contend that the prosecutor's attempt to portray him as the "ringleader" of the conspiracy at issue was inaccurate. He simply argues that the analogy was prejudicial merely because the prosecutor mentioned the name of Saddam Hussein. However, seen in context, it is clear that the prosecutor's analogy was not intended to inflame the jury. There was no error.

### 5. Alleged Mischaracterization of Evidence

Petitioner asserts that the prosecutor referred to facts not in evidence by asserting that Petitioner and his co-conspirators used guns to "protect the operation" and by stating that Petitioner had admitted to possessing cocaine. (Closing Argument Tr., p. 7). Petitioner did not object to these statements at trial or on appeal. As the Government correctly points out, law enforcement officials (with Petitioner's consent) searched Petitioner's residence and discovered "cocaine, an electronic scale, a microwave with cocaine . . . . cellular phones, a strainer, bags, as well as two guns." (Doc. no. 16, p. 4 (citing Trial Tr., pp. 187-202, 233)). The Government also correctly notes that Petitioner actually did admit to possessing the cocaine at trial. (Id. at 5 (citing Trial Tr., pp. 495-96, 500, 529)). At any rate, Petitioner falls to show that any of the prosecutor's statements prejudiced him in any way. In sum, no plain error occurred which may now be raised on collateral attack.

### III. CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the United States of America ("the Government"). The Court also **REPORTS** and **RECOMMENDS** that Petitioner's motion for an evidentiary hearing (doc. no. 19) be **DENIED**. Finally, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion to amend and supplement his § 2255 motion (doc. no. 20) to include a claim based upon the Supreme Court's recent decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), be **DENIED**.

SO REPORTED AND RECOMMENDED this 27th day of April, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## *Southern District of Georgia*

Ricky Marcus Curry,

)

vs )  CASE NUMBER CV103-135

USA,

)  DIVISION  AUGUSTA

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated April 27, 2005, which is part of the official record of this case.

Date of Mailing: April 27, 2005

Date of Certificate  ☒ same date,  or _____

Scott L. Poff, Clerk

By: ___C Reynaldo___

Deputy Clerk

Name and Address

Ricky Marcus Curry  Atlanta U.S.P.  09857-021  P O Box PMB  Atlanta GA 30315
Amy Lee Copeland, Esq.

☐ Copy placed in Minutes
☐ Copy given to Judge
☒ Copy given to Magistrate